May it please the court. Lisa Aylen on behalf of defendant Jonathan Fey. Before I start I would respectfully like to reserve two minutes for rebuttal. Yes. Thank you. Last month in this court recognized that a no contact with minor children with minor children supervised release condition should be vacated where the prior sex offense occurred in the distant past. The intervening time is marked by lawful social activity and the district court fails to explain on the record of the need for such restrictions. Mr. Fey's case falls squarely within that the government makes a good point that he has been in jail for part of the time intervening so there's really nothing that he could have done. I agree but in most of these cases of the temporal remoteness and we have 16 years let's go back to his most recent sex conviction. That was in 1999 he was convicted in 2001 and he was in jail prior to that but he also had been living prior to this case the SORNA violation nearly four years without any unlawful activity. He had been living in Ohio with an age-appropriate girlfriend. Except that he was was he not in violation of his state? Yes the only unlawful activity obviously is the actual SORNA violation for this case. No I thought he was in violation of his state terms. Yes so he was in violation of his state terms because he was living with the girlfriend who had four teenage daughters at the time. Yes so he was in violation of that but that being said even in those four years there were no allegations of any impropriety against any of her I mean she the she had cooperated with probation and said that she was perfectly fine with Mr. Fey and had no problems with him in the house with the daughters. I mean that's not what his prior two sex offenses had to deal with right? The first sex offense that Mr. Fey was convicted of when he was 18 that happened 26 years ago he was involved with a his 14 year old freshman girlfriend and they had sexual relations so that's what got him into trouble in the first place. And the second one no denying not a pretty case he was 28 and had while he was drunk he had sexual intercourse with a 16 year old co-worker who was passed out. But I propose that in every sort of violation case there is a not-so-pretty background of a sexual violation case right? But we don't have a client here who's a sexual predator of young children. How old are the daughters as of the time? The daughters that he lived with at the time are 15, 14, 13, and 10 at the time of that situation and he didn't have any prior history of improper conduct with teenage living in the house. I know in Luis Pablo in that case there was concern that the defendant had relations with somebody in the house and we don't have that situation here right? We have a client whose first arrest was basically his first love and they he had that relationship for many years after his first sexual the actual offense of conviction which the 26 year old won. And then the 16 year old conviction was obviously a co-worker but it was not a family member, it was not a young child, he has not shown any sexual proclivities for young children, male children, any kind of incestuous relationships. I think at some point we need to divide the different typologies of sex offenders. Can I ask what argument you're making because when you quote Pabon and rightly so a key feature of it like in a lot of our cases is the lack of an explanation. Correct. So I'm just wondering why that listening to you it doesn't sound like you're asking for a prohibition against a no contact rule. I'm actually asking for both. So there is a practice as your honors are aware in the district courts of in boilerplate fashion imposing no contact provisions and sex offender treatment. So on the one hand I'm urging the court to send a strong message to the district courts that they need to provide a sufficient explanation on the record before they impose either condition. But I also would like to take it one step further and suggest that not every case warrants, substantively warrants, a no contact provision against all children under 18 or sex offender treatment. It's both. And could you help me, what is the relationship between those two points? In other words, the concern about boilerplate requiring an explanation and the concern that not every case in fact warrants this. What kind of explanation are we looking for that would make it meaningful for us to go back and say please explain yourself because our cases also say sometimes we can infer. Correct. From the record. Exactly. And that's really actually what I want to avoid that situation. So I don't believe that merely saying the magic words from the statute of the district court saying I'm going to deter sexual conduct and I'm going to protect the children out there. Because that's kind of the magic words these cases use. I think they need to actually take the client's case, the defendant's case, and actually draw examples from the defendant's characteristics, offense, you know, his background, the prior record, and actually put on the record more specific examples of why a no contact provision would be appropriate or sex offender. So take for example in this case the no contact provision. Had the judge actually made an inquiry and expanded on the record, there would be no reason to suggest that Mr. Faye had any reason to protect male children. That would be young or teenage. Right? How is the judge supposed to know whether a no contact rule, what is driving the no contact rule? Is there some social science that anybody is putting in? Does probation inform the judge about why this is a meaningful thing and whether it would be feasible to have a more tailored one or whether a more tailored one would be problematic? It just feels as if there's a, if we're demanding explanations of people, you would think it would be an explanation based on something. And I'm not seeing how the process is set up that anyone would know anything on which to base an explanation on. I agree. I can't speak as to probation. My sense is it's just this future harm to any child. So it's just safer for the courts to say no contact with kids. And that includes in the home, work, anywhere. And you go outside, you can't go near anybody under 18 whether they're a girl or a boy. But I personally, with Louise Pabon, Your Honor had actually asked in that case for further information in terms of studies. I personally have actually looked at some of these studies. I turned them into Pabon. I cited a few in the actual opening brief. What it seems to say is there are certain types of sex offenders that are much more likely to re-offend. Most likely those who favor young male children. Those who favor young children in the first place. Those are the higher risk offenders. And they break them, you know, it gets broken down. In this case, Mr. Fay did commit, I mean, statutory rape. And a rape while admittedly he was an alcoholic and unconscious and the victim was. But he's not a serial rapist. So there are studies that kind of break down re-offense rates for those. But I do not believe any court or probation officer has actually been looking at the data. And quite frankly, the Supreme Court decisions that these, that the court keeps relying on, I went back and looked at the Pabon. Those, that data has come from like the 1980s, the mid-1980s. There is not any new data put into the record to answer your question about the fear. Alright, I ran out of time. I don't want to talk more about sex offenders. Sorry. You've reserved some time. Good morning, Your Honors. I'm a police reporter, Kelly Lawrence for the United States. I will address both the explanation requirement and the justification for the conditions that are challenged. You might start by asking, answering, helping with something. Is this sort of violation per se, considered a sexual violation? I don't believe that this court has said so, and many others. Well, has any court ever said so? Not to my knowledge. And does the Justice Department consider it to be a sex violation? I don't believe so. And I think... Then why do you people ask that there should be some kind of sex instruction, almost in every one of these cases I've seen, because of that sort of violation? How is one thing related to the other, in other words? Speaking for this case, which is all that I can speak about very knowledgeably, the sex offender conditions or the no contact with minors conditions are... Excuse me? I'm not referring to that. I'm referring to the part that has to do with... I forget the exact way it's phrased, but basically instructions on sex offender instruction. In a trial situation or in a... No, no. It's part of the remedy that's ordered to you. The conditions. Yes. Yes. I believe, and I believe this is true in this case, that the SORNA violation is based on a prior sex offense or more than one prior sex offense. And so when you're looking at the history and characteristics of the defendant who has failed to register and therefore is being charged with or convicted of a SORNA violation, you have to consider the underlying conduct as well. And so in that case, when you look at the conduct, you determine whether that generates any need for special considerations in the supervised release context. So in this case, for example, with the defendant's two prior sex offenses, the court could reasonably look at his record, the nature of those he has done. And I'd note that it's not only the violations themselves in this case that's very important. It's also his conduct following the violations that gives rise to the special... What was that? After his first conviction of sexual assault of his 14 year old girlfriend, and he was 19 at the time, she was 14. He not only continued the relationship, but that was in direct violation of the no contact order imposed on him following that violation. It was against the wishes of her parents, the girl's parents, as well as the court. So he continued that relationship in violation of that condition. He also went on crime sprees, maybe overstating it, but he had over a dozen infractions in his 20s, leading up to the rape of the 16 year old co-worker. After his incarceration in that case, he was also subject to a 10 year term of probation with conditions such as no contact with minors, no living with minors. He violated that as well by absconding from Massachusetts and moving in with a woman in Ohio, for which he did not seek approval from a Massachusetts probation officer. I'm not even sure the condition permitted approval, but even if it had, he didn't get it. And he lived with a woman and her four young daughters, which was also in violation of probation. So it's not just the violations themselves, but the conduct, the blatant disregard for the probation conditions that he violated. So when this record is presented to the district court here, she has not only to consider the prior violations themselves, but what the defendant has done to ensure to the violations seriously, and he's trying to reenter society and live a law abiding life as an adult. By being totally isolated from the world. But he isn't isolated from the world and the conditions, I think, specifically say he can get approval from the probation officer in the court. It's on the record in this case that the court asked the probation officer during the sentencing hearing, in the context of work and employment, would you unreasonably withhold permission if the defendant got a dishwashing job and came to you the next day? And the probation officer said, no, we just want to make sure we're apprised of the risks so that we can evaluate it properly. Can he go to a movie where there are going to be a virus present? As this court explained in Calvone, typically that incidental contact is not really incidental contact. Typically the courts construe it and probation seems to view it similarly, that it means it excludes incidental contact. It really means direct contact, intentional contact. So yes, he could go to the movie theater. And how is he supposed to know what is the bounds of this? Because as written, if he wanted to comply with it, it's not obvious that he could go to the movie theater. That's true as it's written. However, the court has interpreted it in its decisions as saying that's not really what it means. It means something more. And that's true in the context. I think we've had discussions about the felon, the associating with felon condition. That's one of the standard conditions for supervised release and that the court doesn't construe it as incidental so that if you're in a movie theater with other convicted felons, that wouldn't cause you to violate your terms of supervised release. But how can we be sure that these interpretations are being communicated adequately between the probation officer and the probationer? That framework for supervised release is something that I'm not personally familiar with, but have the contact that I have had in conversations with probation officers. They have an interest, and that is what the conditions are for, in assuring productive and satisfying reentry into the rest of the public life and to have this person abide by the law. And so their goal there is to help the person achieve, not to look for nitpicky violations that would set them back. And how is that proposition consistent with the fact that if I understand the no child contact rule, he cannot have a family? That's not how I would read that rule. Well, how could he have a family? He can ask probation. First of all, he doesn't have any minor children. So setting that aside, and it doesn't appear that he has any relationship with his brothers and sisters. But doesn't he have a fiance with children? I thought the record showed he had a fiance with children. That's what it said at the time of his conviction. I don't believe that to be true now. Nothing in the record shows it's not true, does it? Nothing in the record shows it's not true. And at the time of sentencing, when they imposed the no contact rule, it was true. It was true. And outside the record, according to the sentencing record. So with the sticking to that, the sentence was imposed on the understanding that he had a fiance who had children. It was. And the desire to have him re-enter into life was such that there's a flat prohibition that he has to go to probation first in order to be allowed to continue that relationship. It was the condition that was imposed at the time. And I'd also note that at the time of sentencing. And what would be the sense in allowing a district court to do that without explaining why it thought it was necessary to do that? Well, with regard to the explanation in this case, we recognize that this court has required an explanation for conditions of supervised release, as well as for a term of incarceration. But it's also true that a claim that the explanation is inadequate can be forfeited as it was here. And that the lack of explanation alone does not establish a plain error. How was it forfeited? The defendant didn't object to the lack of explanation in the district court. There was a colloquy between the judge and defense counsel about these certain conditions that are now challenged on appeal. He objected to the condition. He objected to the condition. But you think it's, you have to separately say, oh, and I don't like that. There was no explanation. I believe that that's the court's view, at least in sentencing in the other than supervised release conditions. That's certainly true. And I don't see why. Even when you object to the. That's my understanding of the court's case law. Violation of 3553C is its own procedural violation separate and apart from perhaps any errors in applying a certain guideline enhancement. Those are typically treated separately by the court. Right. But here they kind of dovetail together. If I say, I don't want this condition imposed on me, then the judge says, tough luck, I'm imposing it. I've forfeited my right to object if I don't then separately object and say, well, I don't like the fact that you didn't give an explanation. Do we have a case saying that? My understanding of the cases is that they do require a more of an objection to the explanation given. But even when you've objected to the underlying condition, do we have a case saying that? Again, in the guideline context, I don't have a case that would say that in the supervised release context, but I don't see why the analysis would be different. Here, the defense counsel had a back and forth with the district court judge. She mentioned the prior rape conviction, which indicated she thought that was very serious. He said, but I want to have an age appropriate relationship. She said, well, he can't live with his girlfriend and her daughters in Ohio because of relying on the Ohio probation officer's view that that would be inappropriate. So the court did address those considerations and did respond. Defendant then said, I don't want to belabor the point. Thank you for hearing me. So we have a short, but I think informative colloquy between defense counsel and the judge addressing this very condition in the no contact analysis. So given our cases, which have sometimes found plain error for lack of explanation, what is the sense in saying that you don't have to give an explanation? I'm sorry, could you repeat that? Given that we have cases saying that the failure to give an explanation can be plain error, particularly when the condition is a significant one. What is the sense in us allowing district courts to impose these restrictions without explaining themselves? I don't think there is a sense in doing that. My point is that there was an explanation here that you can see from the colloquy. What's the explanation? The explanation, I believe, is that the district court noted the prior rape of the young girl. When the defendant started to say he was not a pedophile, he has none of this is appropriate to him. She said, but what about the rape? And then the defendant said, but it would prohibit him from living with his girlfriend and her daughters. And the court acknowledged that and said she understood, but also said the doesn't approve that, which is not to say that the court has said, sorry, what was the explanation? If I were to say what, what was the reason the district court did it? You would say what? I would say that she recognized the seriousness of the prior offense and that was concerning. And then also that she wasn't agreed with probation, that it was not appropriate for him to be living with the woman and her four young daughters. Why? Oh, because of, do we know why? The record has to fill in that gap because the record is clear that that was a violation of his state probation and also the seriousness of the earlier offense. Thank you. Just a quick point of clarification on your question. The judge did comment. It was a draconian order, but he was forced to follow it. That's all that's in the record on that. But before I'd like to get that, because that was the order that was placed in the record. There wasn't really a lot of explanation. Did he say he was forced to follow it? He didn't say I'm forced to follow. He just said it's a draconian order and then they moved on. That's it. That's the only two things in the record on that specific topic. And I'd like to just quickly get back to the sex offender treatment provision. In this case, Mr. Faye already completed almost four years of sex offender program for his 16 year old conviction before he was released from prison in this case. And I just think that we have this issue with Morales-Cruz, right? SORNA is not a sex offense. And in a lot of these cases, it'd be more appropriate to give mental health treatment or anger management treatment, but not sex offender treatment. So for sex offender treatment, there'd have to be something in the record showing that the defendant had a proclivity for some sort of sexual deviant behavior, that that proclivity somehow is still manifested, which was not present in this case. And in Morales-Cruz, there was no procedural tax, so nobody ever said there wasn't anything clearly in the record. And that defendant had had a violent domestic assault several years prior to that conviction. So Mr. Faye's case is actually very different in some ways than Morales-Cruz, though I completely agree with your dissent that it has become very common practice to impose sex offender treatment in a SORNA violation case. Can I ask about a potential waiver issue that arises here? If I understand it, the condition is not to have the treatment. It's initially to have an evaluation as to whether there needs to be the treatment. Yes, but counsel said you put in the horse before the cart. The reality is my client's getting sex offender treatment. But then when the judge, I thought, said, but this is just the evaluation first, I will cross that bridge when we come to it, which sounds like saying post-evaluation, if I disagree with it, you can bring a modification challenge or something, which is a way of not raising to the judge a concern with the particular thing that was being imposed, which was the evaluation, since there was not at that time an order to undergo the treatment. Correct. I mean, I don't even think the evaluation was appropriate. That's fine. You have seven circuit cases, fine, I'm sure, sorry. I understand. I understand that you're challenging the evaluation. I'm asking whether there is a challenge beyond the requirement that he be evaluated.  I mean, it's to be actually evaluated. But why is it that way? I don't believe it was waived. I think counsel did the best he could under the circumstances and knew the judge wasn't going to backpedal, so he just, I mean, this is the reality of the interplay right between counsel and a judge. He did what he could. He moved on. He knew there was no way he was going to get more, which was sex offender treatment was completely inappropriate. The judge is like, you're getting evaluated, move on. And so counsel moved on in his other arguments. I think it isn't waived. I think in other jurisdictions they've found sui sponte violations of sex offender treatment being imposed, and here we certainly don't even have that. I think there's been, you know, and I think there's a split among the circuits in terms of how we want to address the sex offender treatment. I'll cross that bridge when I come to it, an acknowledgment that it's a premature objection. It doesn't waive it at the appropriate time, but for purposes of this appeal, why isn't it waived? I guess I don't feel it's waived. I think he, counsel objected to sex offender treatment. The court's like, he's getting evaluated. Counsel says you're putting the horse before the cart, basically knowing that sex offender treatment's coming because you're getting evaluated and you start that whole process of sex offender treatment. It is the beginning of sex offender treatment. That's how I see it. Thank you.